**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| DOMINIC Y. JU, *et al.*,<br>            Plaintiffs<br>            v.<br>RANDOLPH CARTER, *et al.*,<br>            Defendants |

Civil Action No. 14-391 (CKK)

**MEMORANDUM OPINION**
(August 31, 2015)

Plaintiffs Dominic Ju and Dana Ju filed suit against Defendants Randolph Carter and Elizabeth Denevi alleging breach of contract, breach of the implied covenant of good faith and fair dealing, breach of warranty, negligent and fraudulent misrepresentation, and negligence per se. Their claims arise out of Plaintiffs' purchase of a house from Defendants pursuant to a standard form contract executed in April 2013. Specifically, Plaintiffs allege that, upon moving into the house, they discovered a water leak and asbestos flooring in the basement of the house. Presently before this Court is Defendants' [3] Motion to Dismiss Plaintiffs' Complaint. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record for purposes of this motion, the Court GRANTS Defendants' motion, for the reasons stated below. The Court dismisses this case in its entirety.

---

[1] The Court's consideration has focused on the following documents:
- Defendants' Motion to Dismiss ("Defs.' Mot."), ECF No. 3;
- Plaintiffs' Memorandum in Opposition to Motion to Dismiss ("Pls.' Opp'n"), ECF No. 8; and
- Defendants' Reply to Plaintiffs' Memorandum in Opposition to Motion to Dismiss ("Defs.' Reply"), ECF No. 9.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

# I. BACKGROUND

For the purposes of the motion before the Court, the Court accepts as true the well-pleaded allegations in Plaintiffs' Complaint. The Court does "not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014). Moreover, when a written instrument is attached to a complaint and it contradicts the allegations in the complaint, the written instrument controls. *See* 5A Charles Wright & Arthur Miller, *Federal Practice and Procedure: Civil 3d* § 1327, 450-451 (3d ed. 2004) ("It appears to be well settled that when a disparity exists between a written instrument annexed to the pleadings and the allegations in the pleadings, the terms of the written instrument will control, particularly when it is the instrument being relied upon by the party who made it an exhibit."). Here, Plaintiffs have attached to their Complaint (1) a Greater Capital Area Association of Realtors ("GCAAR") Regional Sales Contract dated April 1, 2013; (2) a Jurisdictional Disclosure and Addendum to the Sales Contract; and (3) a Seller's Property Condition Statement dated February 24, 2013. Accordingly, the Court will rely on the terms of these written instruments to the extent they directly and clearly contradict Plaintiffs' allegations.

## A.  Factual Background

This case concerns the sale of a residence located at 1311 Floral Street, N.W., Washington, DC (the "Property"). Compl. ¶ 1. Defendants listed the Property for sale in the Multiple Listing Service ("MLS"), advertising the Property's basement as "fully finished w/ BR." *Id.* ¶ 22. Prior to the sale of the home, Plaintiffs provided Defendants with a Seller's Property Condition Statement, dated February 24, 2013 (the "Disclosure Statement"). *Id.* ¶ 25; *id.*, Ex. 6 (Seller's Property Condition Statement), at 1-7. In the Disclosure Statement,

Defendants represented, among other things, that they had no "actual knowledge" of (1) "any current leaks or evidence of moisture in the basement," (2) "any structural defects in walls or floors," (3) "any problem with drainage on the property," (4) "any substances, materials or environmental hazards [including asbestos] on or affecting the property," or (5) "whether the property has previously been damaged by flooding." *Id.* ¶ 26 (alteration in original).

Plaintiffs purchased the Property from Defendants in April 2013 for $800,000 using a GCAAR Regional Sales Contract ("the Sales Contract"). *Id.*, Ex. 6 (Sales Contract), at 1. The Sales Contract provided that the Property would be conveyed in its "as-is" condition and contained a standard integration clause. *Id.* at 2, 7; *see also id.*, Ex. 6 (Addendum of Clauses), at 1 (" 'As-Is' Property Condition"; "All clauses in this Contract pertaining to termites and wood destroying insects, private well and/or private sewage systems, and compliance with city, state or county regulations are hereby deleted from this Contract."). Pursuant to the Sales Contract, all contingencies related to conveyance of the Property must "be specified by adding appropriate terms to [the Sales Contract]." *Id.*, Ex. 6 (Sales Contract), at 6. Plaintiffs did not request any contingencies related to the condition of the Property. In addition, Plaintiffs expressly declined to make their purchase of the Property contingent on any inspections of the physical conditions of the Property. *Id.*, Ex. 6 (Sales Contract), at 2 (selecting option "declining the opportunity to make [the] Contract contingent on home inspection(s) and/or other inspections").

The parties also jointly ratified a Jurisdictional Disclosure and Addendum ("Jurisdictional Addendum") to the Sales Contract. Compl., Ex. 6 (Jurisdictional Addendum). The Sales Contract explicitly incorporated the Jurisdictional Addendum, providing that the Jurisdictional Addendum, "if ratified and attached, is made part of this [Sales] Contract." *Id.*, Ex. 6 (Sales Contract), at 1. The Jurisdictional Addendum references the Disclosure Statement, providing that "the Buyer is

3

entitled to a Seller's Disclosure Statement … and hereby acknowledges receipt of the same." *Id*., Ex. 6 (Jurisdictional Addendum), at 3. In the Disclosure Statement, Defendants represented that they did not have any "actual knowledge" that the basement had water damage, structural defects, or hazardous materials, including asbestos. *Id*., Ex. 6 (Disclosure Statement), at 1. Notably, however, the Disclosure Statement states that it "is a disclosure only," "not intended to be a part of any contract between Buyer and Seller," "NOT A WARRANTY OF ANY KIND BY THE SELLER," and "NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THE BUYER MAY WISH TO OBTAIN." *Id.* (emphasis in original).

On May 17, 2013, the parties closed on the sale of the Property. *Id*. ¶ 30. On July 12, 2013, Plaintiffs moved into the Property. *Id*. ¶ 31. That evening, Plaintiffs discovered wet carpet in the basement. *Id*. ¶ 32. When Plaintiffs removed the carpet, they discovered extensive water damage, disturbed asbestos tiles, and black mold. *Id.* Plaintiffs then emailed Defendants to inquire whether Defendants were aware of prior instances of flooding in the basement. *Id*. ¶ 33. Defendants responded that "[o]nce we fixed the drainage outside, we had no water in the basement." *Id*. ¶ 34. Plaintiffs obtained expert assessments of the cost of repairs to bring the basement to habitable condition. *Id*. ¶¶ 51-52. These assessments estimated costs between $70,000 and $100,000. *Id.* Plaintiffs state that they have already spent "significant sums" to correct some of the defects and hazards. *Id*. ¶ 56.

## B.  Procedural Background

Plaintiffs filed suit in the District of Columbia Superior Court on February, 12, 2014, bringing several claims pursuant to District of Columbia law. Specifically, Plaintiffs brought claims for breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), breach of warranty (Count III), negligent and fraudulent misrepresentation

(Counts IV and V), and negligence per se (Counts VI and VII). Plaintiffs also brought claims (Counts VIII and IX) against the construction company Robert L. Lee Jr. & Associates and its owner Robert Louis Lee, Jr., *see id.* ¶¶ 4-8, 14-15; however, Plaintiffs voluntarily dismissed these claims in the Superior Court, *see* Notice of Removal, ECF No. 1. Plaintiffs request damages for each of the remaining claims in this action. *See* Compl. at 14-17, 20-21, 23.

On March 12, 2014, Defendants removed the lawsuit to this Court. *Id.* Defendants subsequently filed a Motion to Dismiss, requesting that each of the claims remaining in this action be dismissed with prejudice. Plaintiffs have filed an Opposition and Defendants a Reply. Accordingly, Defendants' Motion is now ripe for review.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In deciding a Rule 12(b)(6) motion, the Court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *Marshall Cnty. HealthCare Auth. v. Shalala*, 988 F.2d 1221, 1226 n.6 (D.C. Cir. 1993).

# III. DISCUSSION

Defendants move to dismiss each of the claims in the Complaint. In light of the analysis below, the Court agrees and dismisses each claim for failure to state a claim upon which relief may be granted.

As an initial matter, the Court addresses a matter generally applicable to the parties' disputes regarding the several claims in this action. Plaintiffs rely heavily on *Wetzel v. Capital City Real Estate, LLC*, 73 A.3d 1000 (D.C. 2013), and on *Jefferson v. Collins*, 905 F. Supp. 2d 269 (D.D.C. 2012), in opposing the pending motion to dismiss. *See* Pls.' Opp'n, Table of Authorities (indicating that Plaintiffs "chiefly rely" on these cases). At the outset, it is important to explain that those cases are readily distinguishable from the one before the Court. In *Jefferson*, another district judge in this district granted in part and denied in part the defendants' motion to dismiss in a case regarding a home renovation project gone awry. 905 F. Supp. 2d at 274. While the underlying facts in that case bear *some* resemblance to those in the case before this Court, there are two fundamental differences between the two cases that explain why *Jefferson*, as a whole, has little bearing on the currently pending motion to dismiss. First, Plaintiffs in this case attached to their Complaint the Sales Contract and other addenda, including the Disclosure Statement. Accordingly, as explained above, the Court looks to the language of those documents in resolving the issues in this case. However, in *Jefferson*, neither the plaintiff nor the defendants appear to have attached the sales contract or other relevant documents; accordingly, that judge was required to assume the truth of well-pleaded allegations in the complaint—regardless of the actual language of the documents themselves. *See* 905 F. Supp. 2d at 274. Second, it appears from the district court's resolution of that case that the *Jefferson* defendants raised different arguments in favor of dismissal. For instance, one of the defendants in that case argued that

certain defects occurred after delivery of the home; that the plaintiffs waived any objections by accepting the property with defects; and that defendant's obligations were satisfied upon delivery and acceptance of the deed. *See id.* at 280-284. Those arguments are not raised in this case. Nor does it appear that arguments that are central to the Court's resolution of this case, such as the legal import of the "as-is" clause or the reasonableness of reliance on the Disclosure Statement, were raised in *Jefferson. See generally id.* The *Jefferson* court's resolution of the motion dismiss before it was limited to the arguments presented in the briefing on that motion and simply does not indicate the proper resolution of the arguments before this Court. That is to say, just because the *Jefferson* court concluded that a certain claim survived the motion to dismiss in that case does not mean that an analogous claim in this action would survive the pending motion to dismiss. Where the facts and the legal arguments before the Court differ—as is true in comparing these two cases—the legal outcomes will differ, as well.

Similarly, *Wetzel* is distinguishable. *Wetzel* pertains to the purchase of a condominium unit, 73 A.3d at 1002, whereas this case pertains to the purchase of property in fee simple, without any connection to a condominium-related transaction, Compl., Ex. 2. Therefore, while certain documents relating to the underlying sale were attached to the complaint in *Wetzel*, the documents governed that sale differed from those relevant to this case. *See* 73 A.3d at 1002 (Condominium Unit Purchase Agreement and Public Offering Statement attached to *Wetzel* Complaint). Accordingly, the legal meaning that attached to those documents necessarily differs from the legal meaning of the documents attached in this case. Other key facts also differ. In *Wetzel*, Plaintiffs sued a real estate developer that was "actively involved" in the renovation, *id.*, whereas Defendants in the case before this Court are owner-occupants that did not themselves conduct the renovation of the Property, *see* Compl. ¶¶ 13-16, 21. In addition, in *Wetzel*, plaintiffs

were the beneficiaries of a limited warranty, *see* 73 A.3d at 1005, whereas Plaintiffs in the case before the Court have not identified any warranties of which they are beneficiaries. Lastly, as the Court explained in regards to *Jefferson*, above, the legal arguments presented to the D.C. Court of Appeals in *Wetzel* differ from those presented in the motion to dismiss before this Court. Nevertheless, as a product of the District of Columbia Court of Appeals, *Wetzel* contains definitive statements of District of Columbia law that are binding on this Court. However, the appellate court's resolution of the particular issues before it does not indicate the proper resolution of the issues raised by the pending motion to dismiss in this case. Once again, where the facts and the legal arguments differ, the resolution of the claims will be different as well. In that light, the Court proceeds to consider the parties' arguments regarding each of the claims subject to Defendants' motion to dismiss.

## A.  Breach of Contract (Count I)

Plaintiffs allege that Defendants breached the material terms of the Sales Contract when Defendants failed to disclose "actually known asbestos hazards, water damage, and structural defects" and to "deliver the Property to Plaintiffs with the basement in a habitable condition free from environmental hazards and water damage problems." Compl. ¶¶ 63, 68. For this claim, Plaintiffs rely on the terms of the Sales Contract, as well as representations made in the Disclosure Statement provided to Plaintiffs prior to closing. Defendants argue that the Complaint fails to state a claim for breach of contract because the Sales Contract clearly indicates that the Property was sold "as-is." Defendants also argue that the Sales Contract's integration clause bars consideration of any representations in the Disclosure Statement—or elsewhere—because the Disclosure Statement is not explicitly incorporated into the Sales Contract.

Case 1:14-cv-00391-CKK   Document 12   Filed 08/31/15   Page 9 of 25

To state a claim for breach of contract, a plaintiff must allege: (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach." *Wetzel*, 73 A.3d at 1005. The Court agrees with Defendants that Plaintiffs' breach of contract claim must be dismissed because Plaintiffs have failed to identify an obligation or duty arising out of the Sales Contract that was breached by Defendants.

### 1. Sales Contract's Plain Language

The plain text of the Sales Contract does not support Plaintiffs' breach of contract allegations. The Sales Contract states clearly that the "[p]urchaser acknowledges that except as otherwise specified in this Contract, the Property, including electrical, plumbing, existing appliances, heating, air conditioning, equipment and fixtures shall convey in its AS-IS condition as of the date [of Sales Contract execution]." Compl. Ex. 6 (Sales Contract), at 2 (emphasis in original). The plain meaning of "as-is" is "in the existing condition without modification." Black's Law Dictionary (10th ed. 2014). Black's Law Dictionary also notes that "[g]enerally, a sale of property 'as is' means that the property is sold in its existing condition, and use of the phrase *as is* relieves the seller from liability for defects in that condition." *Id.* Indeed, the D.C. Court of Appeals has described an "as-is" provision, in the context of a lease, as a "fundamental—and very specific" term. *Capital City Mortgage Corp. v. Habana Vill. Art & Folklore, Inc.*, 747 A.2d 564, 569 (D.C. 2000). Plaintiffs do not allege that the Property was delivered in a condition different from the "existing condition" at the time of Sales Contract execution. Moreover, Plaintiffs could have conditioned their purchase of the Property on the results of inspections of the property but they waived their right to any and all inspections. *See* Compl, Ex. 6 (Addendum of Clauses), at 7. The only other representation in the Sales Contract

as to the condition of the Property is a second clause stating that "Seller will deliver the Property

free and clear of trash and debris, broom clean and *in substantially the same physical condition*

*to be determined as of Contract Date*." *Id.* (emphasis added). Plaintiffs do not allege that the

Property was in violation of any of those conditions at the time of Sales Contract execution.[2]

Accordingly, the Court finds that Plaintiffs have failed to identify an obligation or duty arising

out of the plain language of the Sales Contract that Defendants breached.

## 2. Disclosure Statement

Notwithstanding the language of the Sales Contract itself, Plaintiffs contend that the

Disclosure Statement that Defendants provided Plaintiffs prior to the sale included

representations about the condition of the Property that were incorporated into the Sales

Contract. Because the Disclosure Statement represented that Defendants did not have any "actual

knowledge" that the basement had water damage, structural defects, or hazardous materials,

including asbestos, Plaintiffs allege that Defendants breached the Sales Contract by "failing to

disclose actually known asbestos hazards, water damage, and structural defects in the Property."

Compl. ¶¶ 64, 68. Plaintiffs contend that the Disclosure Statement was incorporated into the

Sales Contract when Defendants checked two boxes in the Jurisdictional Addendum to the Sales

Contract, specifically, the "No" box next to the language reading "Pursuant to D.C. Code §42-

1301, the Seller is exempt from property condition disclosure," Compl. Ex. 6 (Jurisdictional

Addendum), at 1, and the "Yes" box next to the language reading "Pursuant to D.C. Code §42-

1302, prior to the submission of the offer the Buyer is entitled to a Seller's Disclosure Statement

---

[2] The parties also entered into a Post-Settlement Occupancy Agreement as part of the Sales Contract, which permitted Defendants to remain in the Property until July 9, 2013, at which time Plaintiffs had the opportunity for a "Final Inspection." Compl., Ex. 6 (Post-Settlement Occupancy Agreement), at 1-3. There is no allegation in the Complaint that the Property was not found to be in the required condition at the Final Inspection.

(if the Seller is not exempt), and hereby acknowledges receipt of the same," *id.* at 3. The Court disagrees that these checked boxes incorporate the Disclosure Statement into the Sales Contract. The checked boxes indicate only that (1) Defendants were required to complete a Disclosure Statement, pursuant to a duty under D.C. law that was independent of the contract between the parties, and that (2) Defendants delivered that statement to Plaintiffs—nothing more. *See Rock v. Voshell*, 397 F. Supp. 2d 616, 623 (E.D. Pa. 2005) (finding that a similar Jurisdictional Addendum provision acknowledging that "Buyer has received a Seller's Property Disclosure Statement before signing this agreement" indicated "receipt of that Statement and nothing more").

In arguing that a duty to fill out the Disclosure Statement in good faith is incorporated into the Sales Contract, Plaintiffs rely only on the principle that all terms of the contract must be given meaning. *See, e.g., 1010 Potomac Assocs. v. Grocery Mfrs. Of America, Inc.*, 485 A.2d 199, 205-206 (D.C. 1984). But it is Plaintiffs' interpretation that fails to give meaning to the explicit language of the Disclosure Statement that "[t]his information is a disclosure only and is not intended to be a part of *any contract* between Buyer and Seller." Compl., Ex. 6 (Disclosure Statement), at 1 (emphasis added). Moreover, the Disclosure Statement is explicit as to its purpose:

> Purpose of Statement: This Statement is a disclosure by the Seller of the defects or information actually known by the Seller concerning the property, in compliance with the District of Columbia Residential Real Property Seller Disclosure Act. Unless otherwise advised, the Seller does not possess an expertise in construction, architecture, engineering, or any other specific area related to the construction of the improvements on the property or the land. Also, unless otherwise advised, the Seller has not conducted any inspection of generally inaccessible areas such as the foundation or roof. THIS STATEMENT IS NOT A WARRANTY OF ANY KIND BY THE SELLER OR BY ANY AGENT REPRESENTING THE SELLER IN THIS TRANSACTION, AND IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THE BUYER MAY WISH TO OBTAIN.

Compl. Ex. 6 (Disclosure Statement), at 1 (emphasis in original). The Disclosure Statement is plainly not intended to be part of the Sales Contract.

Accepting Plaintiffs' interpretation of the Jurisdictional Addendum would also require the Court to ignore the plain language of the Sales Contract, which clearly communicates that the Property was being transferred "as-is." Compl. Ex. 6 (Sales Contract), at 7. Accordingly, the Court concludes that the Defendants have not incorporated into the Sales Contract a promise to complete the Disclosure Statement in good faith and that the Disclosure Statement is not otherwise incorporated into the contract. Consequently, whether the Court may consider the Disclosure Statement in resolving Plaintiffs' breach of contract claim is governed by the parol evidence rule, which the Court considers next.

### 3.  Parol Evidence

Plaintiffs urge the Court to consider the representations in the Disclosure Statement—even if the Disclosure Statement has not been incorporated into the contract by reference. In addition, Plaintiffs urge the Court to consider representations made in additional documents that were not incorporated into the Sales Contract: the MLS Listing and emails between the parties. Plaintiffs argue that the Court should consider these representations pursuant to the fraud exception to the parol evidence rule.

The parol evidence rule provides that when parties to a contract have executed a (1) completely integrated written agreement with (2) terms that are plain and unambiguous, no evidence of prior or contemporaneous agreements or negotiations may be admitted which would either contradict or add to the writing. *Ozerol v. Howard Univ.*, 545 A.2d 638, 641 (D.C. 1988), *petition for rehearing granted and remanded on other grounds*, 555 A.2d 1033 (D.C. 1989). The District of Columbia follows the " 'objective' law of contracts, which generally means that 'the

written language embodying the terms of an agreement will govern the rights and liabilities of

the parties, [regardless] of the intent of the parties at the time they entered into the contract,

unless the written language is not susceptible of a clear and definite undertaking, or unless there

is fraud, duress, or mutual mistake.' " *Armenian Assembly of Am., Inc. v. Cafesjian*, 758 F.3d

265, 278 (D.C. Cir. 2014) (quoting *DSP Venture Grp., Inc. v. Allen*, 830 A.2d 850, 852 (D.C.

2003)). "[E]xtrinsic or parol evidence which tends to contradict, vary, add to, or subtract from

the terms of a written contract must be excluded." *Segal Wholesale, Inc. v. United Drug Serv.*,

933 A.2d 780, 783 (D.C. 2007) (citation omitted). "This rule applies with even greater force if

the contract contains a clause—usually referred to as a 'merger clause' or an 'integration

clause'—indicating that the contract represents a complete and final expression of the parties'

wishes." *Intelsat USA Sales Corp. v. Juch-Tech, Inc.*, 935 F. Supp. 2d 101, 113 (D.D.C. 2013)

(citing *Hercules & Co. v. Shama Rest. Corp.*, 613 A.2d 916, 928, n.17 (D.C. 1992)). Only if the

court finds that "the contract has more than one reasonable interpretation and therefore is

ambiguous," can the court consider extrinsic or parol evidence to "determine what a reasonable

person in the position of the parties would have thought the disputed language meant." *Tillery v.

D.C. Contract Appeals Bd.*, 912 A.2d 1169, 1171, 1176 (D.C. 2006).

Defendants argue that the Sale Contract is a fully integrated contract. Other than arguing

that the Disclosure Statement should be considered incorporated into the Sales Contract,

Plaintiffs do not contest this conclusion. The Court agrees that the contract is fully integrated.

First and foremost, the Sales Contract contains an integration clause: "This Contract, unless

amended in writing, contains the final and entire agreement of the parties and the parties will not

be bound by any terms, conditions, oral statements, warranties or representations not herein

contained." Compl. Ex. 6 (Sales Contract), at 7. Moreover, the use of a standard form contract—

a Greater Capital Area Association of Realtors ("GCAAR") Regional Sales Contract—is further evidence that the contract is completely integrated. *See Hercules*, 613 A.2d at 928 (use of a standard form contract as evidence of complete integration). The Court concludes that the detailed written agreement, signed by the parties, is fully integrated.

Insofar as Plaintiffs argue that the meaning of the "as-is" language in the Sales Contract is ambiguous—and thus parol evidence is necessary to interpret that term—the Court disagrees. In the context of a lease agreement, the D.C. Court of Appeals described an "as-is" clause as "the fundamental provision that defines the very nature of the lease—i.e., that expressly says the tenant takes the property 'as is.' " *Capital City Mortgage Corp.*, 747 A.2d at 569. Moreover, as discussed above, Black's Law Dictionary defines "as-is" as: "in the existing condition without modification." Black's Law Dictionary (10th ed. 2014). It also notes that "[g]enerally, a sale of property 'as is' means that the property is sold in its existing condition, and use of the phrase *as is* relieves the seller from liability for defects in that condition." *Id.* The meaning of "as-is" simply does not accommodate Plaintiffs' allegation that Defendants agreed to deliver the Property in "habitable condition free from environmental hazards and water damage problems." Compl. ¶ 63. To read "as-is" in such a fashion would render the "as-is" clause meaningless. The Court finds that the terms of the Sales Contract governing the condition of the Property are not "susceptible of more than one reasonable interpretation" and therefore are unambiguous. *Tillery*, 912 A.2d at 1176. Accordingly, parol evidence—including the Disclosure Statement, MLS Listing, and emails between the parties—may not be admitted to contradict, vary, add to, or subtract from the terms of the Sales Contract, *see Segal Wholesale, Inc.*, 933 A.2d at 783, unless an exception to the parol evidence rule applies.

In a final effort to rely on the Disclosure Statement as a basis for the breach of contract claim, Plaintiffs argue that the fraud exception to the parol evidence rule is applicable because Plaintiffs fraudulently concealed and failed to disclose structural defects, asbestos hazards, and water leakage. *See* Pls.' Opp'n at 10. The fraud exception to the parol evidence rule permits admission of parol evidence, in certain circumstances, when a party "has been induced by a fraudulent misrepresentation to enter the contract." *One-O-One Enterprises, Inc. v. Caruso*, 848 F.2d 1283, 1287 (D.C. Cir. 1988) (quoting *Giotis v. Lampkin*, 145 A.2d 779, 781 (D.C. 1958)). The D.C. Court of Appeals has distinguished between fraudulent representations about future behavior, which "generally do not support a fraud-in-the-inducement claim," and "prior representations that conceal fraudulent conduct," which "may provide support for such a claim." *Drake v. McNair*, 993 A.2d 607, 624 (D.C. 2010). It appears that the fraud exception to the parol evidence rule is only applicable with respect to the latter category of claims. *See id.* at 622, 624. In addition, it also appears that the fraud exception is only applicable—and reliance on parol evidence is only permitted—when a parol representation " 'was *omitted from* the contract by fraud, mistake, or accident.' " *Id.* at 622 (quoting *Hercules*, 613 A.2d at 929) (emphasis added). Ultimately, while the parties dispute the scope of the fraud exception in D.C., the Court need not resolve the scope of that exception because the Court concludes, below, that the Complaint fails to state a claim for fraud as a matter of law.[3] In the interest of clarity, the Court considers the Plaintiffs' fraudulent misrepresentation claim, separately below. Because the Court concludes

---

[3] The Court also notes that the cases on which the parties rely pertain to the use of the parol evidence in resolving fraud claims rather than resolving breach of contract claims. *See, e.g., Hercules*, 613 A.2d at 923; *One-O-One Enterprises*, 848 F.2d at 1287; *see also Drake*, 993 A.2d at 622-25 (analyzing the scope of the fraud exception to the parol evidence rule and considering the relationship between *Hercules* and *One-O-One Enterprises*). The Court need not consider the applicability of those arguments in the breach of contract context because of the Court's conclusion, below, that Plaintiffs cannot state a claim for fraudulent misrepresentation.

that the fraudulent misrepresentation claim itself fails, the fraud exception to the parol evidence rule is inapplicable, and representations outside the contract cannot be the basis for a breach of contract claim, either.

Accordingly, having found that the plain language of the Sales Contract required only that Defendants convey the Property in "as-is" condition, that the Disclosure Statement is not a part of the Sales Contract, and that the parol evidence rule bars consideration of all of the extrinsic evidence on which Plaintiffs seek to rely, the Court finds that Plaintiffs have failed to state a claim for breach of contract.

**B.  Breach of Implied Covenant of Good Faith and Fair Dealing (Count II)**

Plaintiffs claim Defendants breached the implied covenant of good faith and fair dealing with respect to the Sales Contract by "failing to disclose the Property had been illegally renovated; falsely representing and failing to disclose known structural defects, environmental hazards, and water damage of the Property; and otherwise willfully rendering imperfect performance of the Sales Contract." Compl. ¶ 74. " '[I]n every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract, which means that in every contract there exists an implied covenant of good faith and fair dealing.' " *Himmelstein v. Comcast of the Dist., LLC*, 908 F. Supp. 2d 49, 53 (D.D.C. 2012) (quoting *Hais v. Smith,* 547 A.2d 986, 987 (D.C. 1988)).  "A party may be liable for a breach of this duty if it 'evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party.' " *Id.* (quoting *Paul v. Howard Univ.,* 754 A.2d 297, 310 (D.C. 2000)). However, the covenant of good faith and fair dealing is generally inapplicable to negotiations prior to the formation of the contract, absent narrow circumstances such as when the parties agree to a letter

of intent or explicitly request reassurances. *See Abdelrhman v. Ackerman*, 76 A.3d 883, 892 n.8 (D.C. 2013).

Defendants argue that Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing fails because (1) the purported duties of Defendants with respect to the physical condition of the Property were disclaimed by the terms of the Sales Contract and (2) representations made in the Disclosure Statement did not modify the terms of the Sales Contract. Defs.' Mot., at 12-13. The Court agrees that Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing fails.

Plaintiffs did not breach any duty of good faith and fair dealing resulting from the Sales Contract itself because the only term concerning the condition of the Property in the Sales Contract was the "as-is" term, which did not entail any assurances about the property's condition. Defendants complied with the implied duty with respect to this term when they conveyed the property in its "as-is" condition. Similarly, because the Court concluded above that the Disclosure Statement was not incorporated into the Sales Contract and because the Court concluded that the Court could not consider the Disclosure Statement as parol evidence, the Disclosure Statement cannot be the basis for a breach of the implied duty of good faith and fair dealing. Moreover, since the Disclosure Statement was signed during negotiations over the contract, prior to the parties' closing on the sale, Defendants' completion of that statement—regardless of their actual knowledge about the state of the property—cannot be the basis for a breach of an implied duty of good faith and fair dealing regarding the Sales Contract. *See Abdelrhman*, 76 A.3d at 892 n.8.

Ultimately, the relevant question in a claim concerning the duty of good faith and fair dealing is whether a party's actions "destroy[] or injur[e] the right of the other party to receive

the fruits of the contract." *See Hais,* 547 A.2d at 987 (citation and quotation marks omitted).

Here, Plaintiffs contracted for the Property "as-is," and therefore cannot claim that they did not

receive the benefit of the bargain when they took possession of the Property. Accordingly, the

Court concludes that Plaintiffs have failed to state a claim for breach of implied covenant of

good faith and fair dealing.

## C.  Breach of Warranty Claim (Count III)

Plaintiffs next claim that "[u]nder the material terms of the contract, Defendants Carter

and Denevi warranted that the existing basement was habitable and hazard-free as of the

Possession Date" and that Defendants breached this warranty by delivering a property with water

damage, mold, and asbestos. Compl. ¶¶ 81, 83. As discussed above, the Court finds no language

in the Sales Contract or its addenda creating any type of warranty with respect to the physical

condition or habitability of the Property. The parties contracted for conveyance of the Property

"as-is," and Plaintiffs waived their right to make the sale contingent on inspection of the

Property's physical condition. In fact, the parties expressly contracted for no home warranty. *See*

Compl. Ex. 6 (Sales Contract), at 7 (checking the box for "No" next to "HOME WARRANTY");

*see also id.* at 5-6 (disclosing that "[v]arious home inspection services and home warranty

insurance programs" are available in connection with the physical condition of the Property, but

stating that such disclosure is "not intended to create a contingency" with respect to conveyance

of the Property). Additionally, the Sales Contract's integration clause expressly disclaims any

"warranties" not contained in the Contract. *Id.* at 6. Similarly, the Deed provides for no warranty

other than good title. Compl. Ex. 2, at 1. As discussed above, the Disclosure Statement was not

made part of the Sales Contract either explicitly or implicitly, but, in any event, the Disclosure

Statement unambiguously disclaims the creation of any warranty:

> THIS STATEMENT IS NOT A WARRANTY OF ANY KIND BY THE SELLER
> OR BY ANY AGENT REPRESENTING THE SELLER IN THIS
> TRANSACTION, AND IS NOT A SUBSTITUTE FOR ANY INSPECTIONS
> OR WARRANTIES THE BUYER MAY WISH TO OBTAIN.

Compl., Ex. 6 (Disclosure Statement), at 3; *see also id.* ("[T]his is not a warranty."); *id.*

(Plaintiffs signature acknowledges that "[t]his disclosure is not a substitute for any inspections or

warranties which the buyer(s) may wish to obtain" and that Disclosure Statement "is NOT a

statement, representation, or warranty by any of the seller's agents or sub-agents as to the

presence or absence of any condition, defect or malfunction or as to the nature of any condition,

defect or malfunction."). Accordingly, since the Sales Contract required only that the Property be

conveyed in "as-is" condition and any representations not contained in the Sales Contract are

barred by the parol evidence rule, the Court concludes that Plaintiffs have not—and cannot—

identify any warranty breached by Defendants. *See Knieper v. United States*, 38 Fed. Cl. 128,

137-38 (Fed. Cl. 1997). As a result, Plaintiffs' breach of warranty claim must be dismissed.

## D.  Fraudulent Misrepresentation (Count V) and Negligent Misrepresentation (Count IV)

Plaintiffs claim that Defendants are liable both for fraudulent misrepresentation and for

negligent misrepresentation. " 'In order to prove fraudulent misrepresentation, a plaintiff must

prove (1) a false representation, (2) in reference to a material fact, (3) made with knowledge of

its falsity, (4) with the intent to deceive, and (5) action taken ... in reliance upon the

representation, (6) which consequently resulted in provable damages.' " *Wetzel*, 73 A.3d at 1002-

03 (quoting *Kumar v. District of Columbia Water & Sewer Auth.,* 25 A.3d 9, 15 (D.C. 2011)

(alteration in original)). And, "[a]t least in cases involving commercial contracts negotiated at

arm's length, there is the further requirement (6) that the defrauded party's reliance be

*reasonable*."[4] *Drake*, 993 A.2d at 622 (quoting *Hercules,* 613 A.2d at 923) (emphasis in original). Under District of Columbia law, a plaintiff alleging negligent misrepresentations or omissions must show (1) the defendant made a false statement or omission of a fact, (2) the statement or omission was in violation of a duty to exercise reasonable care, (3) the false statement or omission involved a material issue, and (4) the plaintiffs reasonably and to their detriment relied on the false information. *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1131 (D.C. 2015). The Court first addresses the fraudulent misrepresentation claim, followed by the negligent misrepresentation claim.

Plaintiffs allege that Defendants engaged in fraudulent misrepresentation as to the condition of the Property when Plaintiffs represented in the Disclosure Statement that they had no actual knowledge that the basement had water damage, structural defects, or hazardous materials. Compl. ¶ 93. Defendants argue that Defendants fail to state a fraud claim because Plaintiffs' reliance on representations was unreasonable in light of the explicit terms of the Sales Contract. The Court finds that Plaintiffs have not sufficiently alleged reasonable reliance and that the representations in the Disclosure Statement are not material facts in connection with Plaintiffs' decision to enter into the Sales Contract.[5]

Plaintiffs allege they relied on the representations in the disclosure statement in signing the contract. However, the Court concludes that, not only was reliance on those statements unreasonable as a matter of law, but those statements were not material to the decision to enter

---

[4] Plaintiffs do not dispute that this is a commercial contract, negotiated at arm's length.

[5] In their Opposition, Plaintiffs reference the MLS Listing, which Defendants used to advertise the sale of the property, in the context of their misrepresentation claims. However, nowhere in the Complaint do Plaintiffs identify the MLS Listing as the basis for their fraudulent misrepresentation or negligent misrepresentation claims. *See* Compl. ¶¶ 85-98. Plaintiffs may not amend their complaint through their Opposition, and the Court does not consider the MLS Listing to be a basis for the misrepresentation claims.

into the contract given the content of the contract and the nature of the Disclosure Statement. As discussed above, the "as-is" clause of the contract means that Plaintiffs bought the property "in the existing condition without modification." Black's Law Dictionary (10th ed. 2014). That means that the sellers made no promises about the existing conditions, and that the buyers agreed to take ownership of the property regardless of underlying facts about those conditions. Moreover, the Disclosure Statement itself emphasized that it was not a warranty and that it was not part of the Sales Contract. *See* Compl, Ex. 6 (Disclosure Statement), at 1. Accordingly, the sellers' representations about their knowledge were legally immaterial to the decision to buy the property and any reliance on them was unreasonable. *Cf. Hercules,* 613 A.2d at 929 ("if a judge concludes that a particular representation was superseded by the writing, 'he does not decide that the excluded negotiations did not take place, but merely that *if* they did take place they are nevertheless legally immaterial.'") (citing *Luther Williams, Jr., Inc. v. Johnson,* 229 A.2d 163, 165–66 (D.C. 1967) (emphasis in original)).

Furthermore, any purported reliance on the Disclosure Statement was additionally unreasonable in light of Plaintiffs' waiver of their right to a home inspection, as well as the language of the contract warning that terms outside the Sales Contract were not binding. The Sales Contract cautions that "Purchaser and Seller should carefully read this Contract to be sure that the terms accurately express their respective understanding as to their intentions and agreements." *Id. at 5*. The Sales Contract even warns that "[v]arious inspection services and home warranty insurance programs are available. The Broker is not advising the parties as to certain other issues including without limitation … mold … [and] asbestos." *Id.* at 6. Additionally, the Sales Contract's integration clause expressly states that "the parties will not be bound by any terms, conditions, oral statements, warranties or representations not herein

contained." *Id.* at 7. Finally, the Disclosure Statement itself explicitly states (1) that it "is a disclosure only and is not intended to be a part of *any contract* between Buyer and Seller," Compl. Ex. 6 (Disclosure Statement), at 1 (emphasis added); and (2) that "THIS STATEMENT IS NOT A WARRANTY OF ANY KIND BY THE SELLER OR BY ANY AGENT REPRESENTING THE SELLER IN THIS TRANSACTION, AND IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THE BUYER MAY WISH TO OBTAIN," *id.* In short, Plaintiffs expressly waived their right to a home inspection, which may have revealed the alleged defects in the Property's condition; they may not now claim reliance on a document that on its face said it could not be relied on. As the D.C. Court of Appeals stated in *Hercules*, "[o]ne cannot close his eyes and blindly rely upon the assurances of another absent some fiduciary relationship or emergency." 613 A.2d at 934 (citation omitted). Accordingly, the Court finds that the representations contained in the Disclosure Statement are not legally material and that Plaintiffs' reliance on those representations was unreasonable. As a result, the Complaint fails to state a claim for fraudulent misrepresentation, and that claim must be dismissed.

Plaintiffs allege negligent misrepresentation based on the assertion that Defendants breached their "duty to exercise reasonable care in the marketing, selling, advertising and otherwise promoting of the Property" when Defendants "omitted material information from the Disclosure Statement contained in the Sales Contract," notably, "previous instances of flooding, leaking, and/or drainage problems with the Property, and known asbestos hazard … ." Compl. ¶ 87. Defendants argue that (1) Plaintiffs fail to adequately allege that false representations were made by Defendants because Plaintiffs rely only on representations made outside of the Sales Contract, which are barred by the parol evidence rule; and (2) the terms of the Sales Contract and

the Disclosure Statement preclude justifiable reliance on representations not contained in the Sales Contract.

For the same reasons that the Court concludes that Plaintiffs' fraudulent misrepresentation claim fails, the Court concludes that Plaintiffs have failed to state a claim for negligent misrepresentation because their reliance on the representations in the Disclosure Statement was not reasonable and because the representations in the Disclosure Statement were not legally material to the decision to enter into the Sales Contract.[6]

**E. Negligence Per Se (Count VI)**

" 'To prevail on a negligence *per se* theory, the plaintiff may, in certain circumstances and under specified conditions [,] rely on a statute or regulation as proof of the applicable standard of care.' " *Night & Day Mgmt., LLC v. Butler*, 101 A.3d 1033, 1039 (D.C. 2014) (quoting *Clark v. District of Columbia*, 708 A.2d 632, 636 (D.C. 1997)) (alterations in original).

Plaintiffs' negligence per se claim in Count VI relies on the argument that D.C. Code §§ 42-1305 and 42-1306—which mandate the Seller's Disclosure Statement—establish the relevant standard of care, and therefore that Defendants breached that duty when they, allegedly, failed to comply with those regulations. Specifically, Plaintiffs claim that Defendants are liable for negligence per se because they "affirmatively represented to Plaintiffs in the Disclosure Statement that he [sic] had no actual knowledge of previous instances of flooding, current leaking and/or drainage problems, and/or environmental hazards," and because they "failed to disclose in writing on the Disclosure Statement the Property's known defects, and falsely stated

---

[6] Because the Court concludes that the fraudulent and negligent misrepresentation claims fail as a matter of law, the Court need not consider Defendants' alternative arguments that these claims fail as a result of the economic loss doctrine or as a result of the rule of *Choharis v. State Farm Fire & Cas. Co.*, 961 A.2d 1080 (D.C. 2008), which generally bars recovery in tort for claims that are effectively contract claims.

there were no such known defects." Compl. ¶¶ 101-102. They further claim that they reasonably relied on these disclosures—or the lack thereof—in entering into the Sales Contract. *Id.* ¶¶ 104-05. While Defendants look to the statute to establish the duty and standard of care applicable to Defendants and look to purported violations of this statute to establish a breach of that duty, this negligence per se claim is essentially a duplicate of the negligent misrepresentation claim discussed above. Accordingly, notwithstanding Defendants' reliance on the statute, this claim fails because the Disclosure Statement—and any omission of disclosures from that statement—could not be legally material regarding Plaintiffs' decision to enter into the Sales Contract, and Plaintiffs could not reasonably rely on those disclosures in choosing to do so.[7]

## F.  Negligence Per Se (Count VII)

Before this case was removed from the Superior Court to this Court, Plaintiffs voluntarily dismissed Counts VIII and IX of their Complaint—a negligence claim and an unlawful trade practices claim, respectively, against a separate defendant who had conducted renovations at the Property. Plaintiffs now ask the Court to dismiss without prejudice Count VII, a negligence per se claim related to Counts VIII and IX, which is based on alleged violations of D.C. Code §§ 6-1401, *et seq.*, and DCMR tit. 12. *See* Pls.' Opp'n 27. In their Reply, Defendants argue that that claim should be dismissed with prejudice, as they had argued in their motion to dismiss. However, given Plaintiffs' statement regarding the paucity of facts at their disposal regarding this claim, the Court cannot conclude that " 'the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.' " *Rudder v. Williams*, 666 F.3d 790,

---

[7] Because the Court concludes that the negligence per se claim fails for the same reasons as the negligent misrepresentation claim, it need not consider Defendants' alternative arguments for dismissing this claim.

794 (D.C. Cir. 2012) (quoting *Belizan v. Hershon*, 434 F.3d 579, 583 (D.C. Cir. 2006)).

Accordingly, the Court grants Plaintiffs' request and dismisses Count VII without prejudice.

*     *     *

In sum, the Court concludes that each of the claims discussed above, other than Count VII, fails to state a claim as a matter of law, largely because of the language of the Sales Contract and other documents that Plaintiffs attached to the Complaint, as well as the legal import thereof. Therefore, "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficienc[ies]," *Id.* (citation and quotation marks omitted). Accordingly, the Court concludes that dismissal with prejudice is warranted with respect to each of the claims in this action other than Count VII. *See id.* The Court dismisses Count VII *without* prejudice at Plaintiffs' request; all other claims in this action are dismissed *with* prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' [3] Motion to Dismiss Complaint. The Court concludes that the claims for breach of contract, warranty, and implied warranty of good faith and fair dealing, the claims for fraudulent and negligent misrepresentation, and the claim for negligence per se (Count VI) fail as a matter of law, as explained above. At Plaintiffs' request, the Court dismisses Count VII without prejudice. All other claims are dismissed with prejudice. This case is dismissed in its entirety.

An appropriate Order accompanies this Memorandum Opinion.

Dated: August 31, 2015

/s/<br>
COLLEEN KOLLAR-KOTELLY<br>
United States District Judge